# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# LEWIS T. BABCOCK, JUDGE

Civil Case No. 07-cv-01949-LTB

UNITED STATES OF AMERICA, for the use of
KING MOUNTAIN GRAVEL, LLC, a Colorado limited liability company,

        Plaintiff,

v.

RB CONSTRUCTORS, LLC, an Idaho limited liability company, and
LIBERTY MUTUAL INSURANCE COMPANY,

        Defendants.
_____

# ORDER
_____

        This case is before me on Plaintiff, King Mountain Gravel, LLC's, Motion for Attorney Fees [**Docket # 99**], Defendants, RB Constructors, L.L.C. ("RB") and Liberty Mutual Insurance Company's ("Liberty") (collectively "Defendants"), response in opposition [**Docket # 106**], and Plaintiff's Reply [**Docket # 110**].  Oral argument would not materially assist the determination of this motion.  After consideration of the motion, the papers, and the case file, and for the reasons stated below, I DENY Plaintiff's motion [**Docket # 99**].

## I. BACKGROUND

        Plaintiff—a gravel crushing company—was a subcontractor of general contractor RB on a federal road project in Rio Blanco County, Colorado.  Since the road project was a federal construction project, RB obtained a payment bond from Liberty as required by the Miller Act, 40 U.S.C. §§ 3131–34.  Plaintiff performed its work but was not paid in full under the terms of the contract with RB.  Plaintiff brought this Miller Act action against Defendants asserting breach of

contract, and Defendant filed a counterclaim, asserting Plaintiff had breached the contract by failing to produce gravel in the agreed-upon manner.

On July 30, 2009—following a four-day trial—a jury found in favor of Plaintiff on its breach of contract claim, and awarded Plaintiff $156,169.00 for gravel produced, but not paid for. The jury did not find for RB on its counterclaim. Plaintiff now moves the Court for an award of attorney fees, claiming RB acted in bad faith.

## II. STANDARD OF REVIEW

The "longstanding 'American Rule,' adopted by the Supreme Court in *Arcambel v. Wiseman*, 3 U.S. 306 (1796), generally bars prevailing parties from recovering attorneys' fees in the absence of a statute or enforceable contract providing for such an award." *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 765 (10th Cir. 1997). In the absence of such a statute or contract, attorney fees are recoverable only upon a showing that the losing party acted in bad faith. *See id.* at 765, 769. In order to fall within the bad-faith exception, the party seeking attorney fees must show with "clear evidence that the challenged claim 'is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons.'" *See F.T.C. v. Kuykendall*, 466 F.3d 1149, 1152 (10th Cir. 2006) (quoting *F.T.C. v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1201 (10th Cir. 2005)); *see also Autorama Corp. v. Stewart*, 802 F.2d 1284, 1288 (10th Cir. 1986).

Under the Miller Act—which is treated like any other "plain and simple commercial litigation" for purposes of determining an award of attorney fees—the question whether to award attorney fees is determined under the bad-faith exception. *See Towerridge, Inc.*, 111 F.3d at 765, 769. Although fees awarded under the bad-faith exception in Miller Act cases are punitive in

nature, they "are designed to punish the abuse of judicial process rather than the original wrong underlying the action." *See id.* at 765–66 (internal formatting and citations omitted). Accordingly, the bad-faith exception may apply in cases of "bad faith occurring during the course of litigation that is abusive of the judicial process," or "[w]here a party institutes an unfounded action wantonly or for oppressive reasons, or necessitates an action be filed or defends an action through the assertion of a colorless defense," but will not apply to "bad faith in the acts giving rise to the substantive claim." *See id.* at 768.

### III.  ANALYSIS

Although Plaintiff proffers a lengthy list of acts that purport to show RB acted in bad faith, its central argument is that RB tried—vis-a-vis its refusal to pay and its subsequent failed counterclaim—to pass responsibility for its own failure to timely complete the road project onto Plaintiff by asserting a counterclaim for reimbursement of the liquidated damages RB was required to pay the federal government under its contract with the Federal Highway Administration.  In large part, the acts noted by Plaintiff—which include various acts of omission, subterfuge, and obfuscation during and prior to the negotiation of the contract between Plaintiff and RB—concern "bad faith in the acts giving rise to the substantive claim" and, accordingly, do not provide a basis for an award of attorney fees.  *See Towerridge*, 111 F.3d at 768.

Stripped of this considerable chaff, Plaintiff alleges (1) RB forced Plaintiff to file suit even though RB knew it was in breach of its contract with Plaintiff, and (2) RB maintained a colorless counterclaim.  Both of these arguments fail, however, in light of the actual issues tried in this case.  First, I note that—until the Court ruled otherwise on the first day of trial—RB

maintained a colorable argument that Plaintiff was bound by the terms of a letter mailed by RB on May 29, 2006. This letter included a completion date of July 20, 2006—a deadline Plaintiff failed to meet by nearly three months when it completed gravel crushing services in October 2006—and additional terms, including an indemnity provision, that supported RB's counterclaim for damages.

Even excluding the terms included with the May 29, 2006, letter, however, Plaintiff was still required to prove by a preponderance of the evidence that it substantially completed the gravel crushing within a reasonable period of time under the facts and circumstances of the case. *See* Jury Instructions. Had Plaintiff not made such proof, it would not have prevailed on its claim for breach of contract. *See id.* Similarly, had RB proved by a preponderance of the evidence that Plaintiff failed to substantially deliver the agreed-upon amount of gravel within a reasonable period of time, RB would have prevailed on its counterclaim. *See id.* Accordingly, in order to prevail on its claim for attorney fees, Plaintiff would have to show with clear evidence that RB acted in bad faith when it argued—both in its defense of Plaintiff's claim and in its own counterclaim—that October 2006 was not a reasonable completion date.

Upon review of the evidence introduced at trial, I find no support for Plaintiff's argument. Deposition evidence showed Plaintiff represented that it would complete the required gravel crushing by August 10, 2006. Additional evidence showed that on May 29, 2006, RB mailed Plaintiff a copy of the subcontract including the July 20, 2006, completion date. Although the jury ultimately found October 2006 to be a reasonable completion date, it easily could have found either of these dates—or some other completion date prior to October 2006—to be reasonable. Had the jury found any date prior to October 2006 to be the reasonable

4

completion date, RB would have prevailed on both its defense and its counterclaim. *See* Jury Instructions. Under the circumstances of this case, therefore, I do not find Plaintiff has shown with clear evidence that RB's claims or defenses were "entirely without color [or] pursued for reasons of harassment or delay." *See Autorama Corp.*, 802 F.2d at 1288.

## IV. CONCLUSION

Accordingly, Plaintiff's Motion for Attorney Fees [**Docket # 99**] is DENIED.

Dated: September  30 , 2009.

BY THE COURT:

 s/Lewis T. Babcock 
Lewis T. Babcock, Judge